Courtney LINDE, et al., Plaintiffs,

v.

ARAB BANK, PLC, Defendant.

No. 04–cv–2799 (NG)(VVP)
and related cases.[1]

United States District Court,
E.D. New York.

June 17, 2013.

1. The following related cases have been consolidated with this case for the purposes of discovery and other pretrial proceedings: *Philip Litle, et al. v. Arab Bank, PLC,* 04–CV–5449; *Oran Almog, et al. v. Arab Bank, PLC,* 04–CV–5564; *Robert L. Coulter, Sr., et al. v. Arab Bank, PLC,* 05–CV–365; *Gila Afriat–Kurtzer, et al. v. Arab Bank, PLC,* 05–CV–388; *Michael Bennett, et al. v. Arab Bank, PLC,* 05–CV–3183; *Arnold Roth, et al. v. Arab Bank, PLC,* 05–CV–0378; *Stewart Weiss, et al. v. Arab Bank, PLC,* 06–CV–1623; *Joseph Jesner, et al. v. Arab Bank, PLC,* 06–CV–3869; *Yaffa Lev, et al. v. Arab Bank, PLC,* 08–CV–3251; and *Viktoria Agurenko, et al. v. Arab Bank, PLC,* 10–CV–626.

Joshua D. Glatter, Aaron Schlanger, Naomi B. Weinberg, Cindy T. Schlanger, Gary M. Osen, Peter Raven–Hansen, Osen, LLC, Hackensack, NJ, James P. Bonner, Stone, Bonner & Rocco, LLP, New York, NY, Andrew David Friedman, Wechsler, Harwood, Halebian & Feffer, L.L.P., New York, NY, Mark S. Werbner, Sayles Werbner, Dallas, TX, Peter A. Binkow, Law Offices of Lionel Z. Glancy, Neal Dublinsky, Glancy, Binkow & Goldberg, LLP, Los Angeles, CA, Steven M. Steingard, Kohn, Swift & Graf, PC, Philadelphia, PA, Aitan David Goelman, Peter R. Kolker, Semra Aylin Mesulam, Zuckerman, Spaeder, LLP, Washington, DC, Clyde T. Turner, Turner and Associates, North Little Rock, AR, for Plaintiffs.

Kevin Walsh, Anthony Paul Coles, Douglas Walter Mateyaschuk, Steven J. Young, DLA Piper LLP US, New York, NY for Defendant.

## *ORDER*

NINA GERSHON, District Judge:

In an order filed July 12, 2010, pursuant to Rule 37 of the Federal Rules of Civil Procedure, the plaintiffs were awarded a variety of sanctions against the defendant Arab Bank for its failure to comply with its obligations to produce discovery. The sanctions included "attorneys' fees and costs incurred as a result of the defendant's production failures and the resulting sanctions litigation." *Linde v. Arab Bank, PLC,* 269 F.R.D. 186, 205 (E.D.N.Y.2010), *collateral order appeal dismissed and mandamus denied,* 706 F.3d 92 (2d Cir.2013). Among other things, the order noted that the plaintiffs had spent massive amounts of time and money flying to Jordan to depose witnesses who were directed not to answer questions on the previously rejected ground of foreign bank secrecy and that the defendant's conduct had caused extensive delays and waste of resources. *Linde,* 269 F.R.D. at 205. The issue present-

ed now is the amount of reasonable fees and expenses to be awarded.

■■■■ "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge...." *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1676, 176 L.Ed.2d 494 (2010). The "presumptively reasonable fee" for an attorney's work is what a reasonable client would be willing to pay for that work. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir.2008).

The plaintiffs have requested four categories of fees and expenses: fees for the nine depositions of Arab Bank employees conducted in Jordan; fees for non-deposition activities related to the Bank's withholding of documents and information on foreign bank secrecy grounds, including briefing and attendance at hearings; fees associated with the instant application; and expenses associated with these activities. The defendant raises various objections to the requests which are addressed below.

## I.  General Objections

**Relevance of the ATS Claims**

■■■■ In recent correspondence, the Bank argues that the claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, which constitute the greater number of the approximately 6000 claims in these related cases, will likely be dismissed under *Kiobel v. Royal Dutch Petroleum Co.*, —— U.S. ——, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013), and therefore any attorneys' fees related to ATS claims would be inappropriate.

The Bank's argument is rejected. All of the claims in these cases were consolidated for pretrial purposes and discovery, including the issue of the Bank's assertion of foreign bank secrecy laws, and the parties and the court have treated them together. More importantly, whether or not claims are ultimately successful, a violator of discovery orders is not relieved of the monetary sanctions imposed for those violations. *See* GREGORY

P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 47(B) (4th ed. 2008). The role of a monetary sanction under Rule 37 is to compensate a party for unnecessarily expended attorneys' fees and expenses; it is not to reward the prevailing party in the suit. Therefore, the potential dismissal of the ATS claims is immaterial to the plaintiffs' fee application.[2]

**Date From Which Fees and Expenses Should be Calculated**

The plaintiffs' lawyers request fees and expenses beginning in April 2007. The defendant argues that the plaintiffs should not recover for any work performed before October 31, 2007, when, it argues, the conduct which the court found "noncompliant" first occurred. Based upon the history of the litigation over the Bank's foreign bank secrecy objections, I conclude that the plaintiffs' starting date is amply supported.

On November 25, 2006, Magistrate Judge Pohorelsky overruled the Bank's foreign bank secrecy objections to producing documents and responding to other discovery requests. *Linde v. Arab Bank, PLC*, 463 F.Supp.2d 310, 317 (E.D.N.Y.2006). I affirmed that order on March 14, 2007. *Linde v. Arab Bank, PLC*, No. 04–cv–2799 (ECF No. 320).

The Bank's argument that, because Judge Pohorelsky had allowed the Bank some time to obtain permission to disclose the information sought from pertinent governments and authorities, there was not yet any "noncompliance" on its part, is simply wrong. It was clear from Judge Pohorelsky's order that, whether or not the Bank received permission to comply, foreign bank secrecy laws were not a valid basis for not complying with discovery demands. Moreover, as I noted in the sanctions order filed July 12, 2010, the Bank was required to make a good faith effort to secure permission from the foreign authorities, and it did not establish that it had done so. *Linde*, 269 F.R.D. at 193–94, 199. On the contrary, I found, for example, that its letters to the Lebanese authority "were calculated to fail." *Id.* at 199. Final-

---

**2.** The briefing on the Bank's motion to dismiss the ATS claims is set to conclude on August 2, 2013.

ly, the Bank argues that three of the depositions of bank officials in Jordan, at which bank secrecy was used to bar answers to questions, should not be compensated because they were taken too early, in May 2007. The Bank relies upon an order of Judge Pohorelsky, from June 22, 2006 (ECF No. 198 at 3), stating that the depositions of Arab Bank employees residing outside of the United States "should not proceed until the bank secrecy issue is decided." *Id.* What the Bank ignores is that the issue *was* decided by March 14, 2007, well before those depositions.

**Hourly Rates**

■ The plaintiffs' attorneys seek fees at rates varying up to $655 per hour for partners. The defendant, noting the body of case law to the effect that partners in the Eastern District of New York typically are awarded no more than $300 to $400 per hour in routine cases, argues that these rates are too high.

In determining the appropriate hourly rate, the district court should, among other things, "attempt to approximate the 'market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Green v. City of New York,* 403 Fed.Appx. 626, 629 (2d Cir.2010) (citing *Arbor Hill,* 522 F.3d at 190 and quoting *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.1998)). "[I]n order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court . . . should be 'current rather than historic hourly rates.'" *Gierlinger,* 160 F.3d at 882 (quoting *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). Current rates, rather than historic rates, are used in an effort to "compensate [the attorney] for the delay in payment" of fees. *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir.1998).

The defendant's argument that the plaintiffs' rates should be reduced ignores several highly significant considerations. To begin with, the Bank does not dispute that the rates sought are those at which the plaintiffs' counsel have billed their paying clients and which those clients have paid. Second, this case, or more accurately, these ten cases, involving over 6000 individual, not class, plaintiffs are unusually complex in terms of facts, law, and case management; and the plaintiffs' lawyers have demonstrated their unusual qualifications and experience to handle them. Most importantly, the plaintiffs have established without dispute that Arab Bank's own lawyers, in this very case, have charged their own client at an even higher rate. At the direction of Judge Pohorelsky, who ordered the plaintiffs to pay Arab Bank's fees and expenses if the plaintiffs were not deposed in New York, the plaintiffs paid for two lawyers for Arab Bank at such depositions, one at the hourly rate of $725, including travel time to Israel. Under these circumstances, the Bank's claim that the rates sought by the plaintiffs on the sanctions motion are excessive and inconsistent with rates prevailing in the community is unpersuasive. In *Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund,* 982 F.2d 783, 789 (2d Cir. 1992), the Court of Appeals rejected an identical argument as "untenable" "in view of the fact that TIAA–CREF's attorneys have billed their services at approximately the same rate."

**Duplication of Effort**

■ The Bank argues that the fee requests should be severely restricted because the various attorneys for the plaintiffs have duplicated their efforts. In particular, with regard to the depositions, the Bank argues that it was not necessary for five separate law firms to prepare and attend. The Bank also complains that there was duplication in the non-deposition proceedings. Unreasonable duplication of effort would of course warrant a reduction. But here it is worth remembering that there are over 6000 plaintiffs; and various groupings of plaintiffs, some asserting different claims from the others, are represented by different lawyers. In general, the plaintiffs' counsel in these cases have worked in a coordinated fashion to avoid duplication, for example, by dividing among themselves subjects to be addressed at conferences, filing joint motion papers where possible, and even dividing oral arguments. Indeed, the fee application now be-

fore the court, although containing time records from five separate law firms, was put together and briefed by a single firm. With respect to the depositions, it was reasonable for different plaintiffs' counsel to prepare for, and attend the depositions, with an eye to their particular clients' interests. There is no claim by the Bank that duplicative questions were asked. The claim of unnecessary duplication is rejected.

## II. Reasonable Fees and Expenses

**Reasonableness of Fee Requests for Depositions**

■ The plaintiffs seek legal fees incurred in preparing for, and attending, nine depositions of bank witnesses in Amman, Jordan, where, despite the court orders cited above overruling the Bank's foreign bank secrecy objections, the witnesses refused to answer questions regarding bank accounts at the Bank on that ground. The plaintiffs point out that they did not bill for counsel's travel time to these depositions or for review of the relevant deposition transcripts after they were held, and that they have applied a 50% reduction across the board to their deposition fees to reflect that the depositions were not limited to questions that drew foreign bank secrecy objections. They further note that, once a witness indicated he would not answer questions as to one account, there was no reason to fill the record with more questions and more objections as to other accounts.

The defendant responds that the witnesses answered hundreds of questions, and only a tiny fraction of the questions went unanswered on bank secrecy grounds. In light of the potential significance of the account information, and the fact that, had the witnesses been allowed to answer by the Bank's counsel, there undoubtedly would have been substantial follow-up, it is reasonable to accept the plaintiffs' representation that the preparation for these depositions included considerable preparation on issues as to which the witnesses did not testify. Thus, the Bank's percentage-of-questions analysis does not tell the whole story.

But it remains difficult to assess how much of the plaintiffs' counsel's time was spent on bank secrecy issues. It is not possible, based upon the time records, to accept that simply leaving out their travel time, time reviewing relevant depositions, and reducing their fees by 50% yields a sufficient reduction. For example, some of the lawyers' time entries specify preparation as to customer accounts, and others just state, generally, "deposition preparation." Under all the circumstances, the award will be reduced, and the plaintiffs will be awarded fees for 25% of the time spent in preparing for and taking the nine depositions. Thus, the plaintiffs are awarded attorneys' fees for the nine depositions in the amount of $185,121 ($740,484 × 0.25).

**Reasonableness of Fees Requested for Non-deposition Activities**

■ In determining the reasonableness of the fees requested in this category, it is especially pertinent to note here that "in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel...." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir.2005), As made clear in the underlying decision ordering sanctions, including attorneys' fees, *Linde*, 269 F.R.D. at 197, 200, the defendant's own conduct and delaying tactics have forced the plaintiffs to engage in far more litigation than should have been necessary.

■ Nonetheless, the plaintiffs' requests must still be reasonable, and they have been reviewed for excess. The defendant argues that a reduction in fees sought should be made because some time entries are "block-billed." Block-billing is a practice by which counsel record the total number of hours spent on a matter each day, without separating the time spent on separate tasks. *E.S. v. Katonah–Lewisboro School Dist.*, 796 F.Supp.2d 421, 432 (S.D.N.Y.2011). Though not forbidden, block-billing makes it "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided...." *Simmonds v. N.Y.C. Dep't of Corr.*, 2008 WL 4303474, at *8 (S.D.N.Y. Sept. 16, 2008) (quoting *Williams v. New York City Hous. Auth.*, 975 F.Supp. 317, 327 (S.D.N.Y. 1997)). Where billing records include a large number of block-billed entries and there is an

issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate. *See, e.g., Green,* 403 Fed.Appx. at 630.

Based upon review of the time records, the plaintiffs have sufficiently established that the great bulk of items claimed fall within the sanctions order and are reasonable. While the plaintiffs have not block-billed, as that term is described above, some entries are less informative than others, making a determination as to the reasonableness of the work more difficult than had they been more detailed. The plaintiffs acknowledge that some of the entries in the time records are not specific but argue that was necessary to protect their work product. Whatever the reason, the lack of specificity impairs the ability to review the reasonableness of certain items. Also, some time items are not properly allocated as between compensable and non-compensable activities, or seem excessive. For example, as the Bank points out, in one instance an attorney charged his normal hourly rate for tasks, including photocopying, that should not have been charged at such a rate. An across-the-board reduction is appropriate. Seventy-five percent of the hours billed for non-deposition activities will be awarded. Therefore, the award for non-deposition attorneys' fees is $1,023,738.75 ($1,364,985 × .75).

**Reasonableness of Fee Requests for This Application**

The plaintiffs seek, and will be awarded, the reasonable sum of $32,125 for 73.8 hours of work required for preparation of this fee application.

**Reasonableness of Expenses**

The plaintiffs seek recovery of expenses, related to the work described, above totaling $365,135. All but a small part of these expenses related to the overseas depositions. Once again, the amounts claimed must have been reasonably expended.

The plaintiffs have corrected some limited errors discovered by the Bank, such as including one paralegal's travel time, when the plaintiffs had agreed that they were omitting travel time, and an occasional personal expense.

The Bank claims the amount sought is excessive, primarily on the ground that the plaintiffs' lawyers should have traveled more frugally and stayed in less expensive hotels. This argument is rejected, as the hotels that the plaintiffs' counsel used were either the same as those used by the Bank's lawyers or less expensive than those hotels. The same is true of their flight arrangements. However, the plaintiffs have offered no reduction based upon an allocation of the content of the depositions, which, as described above, contained many substantive responses beyond the foreign bank secrecy objections. For the sake of fairness, only 25% of the expenses claimed will be awarded; this mirrors the reduction applied to fees for the depositions. The award shall be $91,283.75 ($365,135 × .25).

### III. Conclusion

In sum, the Bank is ordered to pay the following amounts incurred as a result of its failure to comply with its discovery obligations: $185,121 for attorneys' fees related to depositions; $1,023,738.75 for attorneys' fees related to non-deposition work; $32,125 for attorneys' fees related to the instant application; and $91,283.75 for expenses associated with the work described above. The total amount awarded is $1,332,268.50. The Bank is ordered to pay this amount to the plaintiffs' counsel no later than forty-five days after the date on which this order is filed.

**SO ORDERED.**