GERSHON, United States District Judge:
Plaintiffs Cleanup North Brooklyn by Jennifer Chantrtanapichate, Osiris Arias, Magda Escobar-Beltran, Zalmen Labin, Sanders Mendez, Jose Manuel Rodriguez, Teghvir Sethi, Mercedes Tapia, Bienvenido Torres, and Benjamin Weinstein bring this motion, pursuant to 28 U.S.C. § 1447(c), seeking attorneys' fees and costs from defendants Brooklyn Transfer LLC, Nino Tristani, Anthony Tristani, GPB Waste NY LLC, and GPB Capital Holdings LLC. To the extent indicated below, plaintiffs' application is granted.
*401 I. BACKGROUND
On August 30, 2017, Cleanup North Brooklyn, a grassroots community group that seeks to restore the health of North Brooklyn, and its individual members filed suit in New York State Supreme Court, Kings County, against defendants. The complaint alleged public nuisance, private nuisance, and nuisance per se under New York State common law based on defendants' operation of a solid waste transfer station located at 105-115 Thames Street in Brooklyn. Defendants timely removed this matter to the Eastern District of New York and plaintiffs moved to remand.
Although plaintiffs' complaint did not assert any federal claims, defendants argued that removal was appropriate because plaintiffs' claims necessarily raised federal questions under the Resource Recovery and Conservation Act, 42 U.S.C. §§ 6962 et seq. and its implementing regulatory scheme. Contemporaneously with their motion to remand, plaintiffs moved pursuant to 28 U.S.C. § 1447(c) to recover costs, including attorneys' fees, incurred in challenging the removal of this action and seeking remand. On April 27, 2018, I granted plaintiffs' motion to remand, finding that:
...issues of federal question jurisdiction can be complicated, but this case presents straightforward common law nuisance claims, and the inappropriateness of a federal forum is readily apparent from the face of the Complaint. Moreover, defendants' erratic and ever-shifting arguments overcomplicated an otherwise unremarkable motion to remand, forcing the plaintiffs to expend unnecessary time and money on research and briefing. Costs, including attorneys' fees, are amply warranted.
Cleanup N. Brooklyn v. Brooklyn Transfer LLC , 2018 WL 1981387, at *3 (E.D.N.Y. Apr. 27, 2018).
II. DISCUSSION
Plaintiffs are represented by counsel from Schindler Cohen & Hochman and New York Lawyers for the Public Interest ("NYLPI"). Plaintiffs' counsel from Schindler Cohen & Hochman represent plaintiffs in this action on a pro bono basis, while NYLPI is a not-for-profit law firm that represents clients free of charge. Plaintiffs seek $ 128,141.25 in attorneys' fees and $ 9,426.24 in costs, for a total of $ 137,567.49 for 351.35 hours challenging the removal of this matter and seeking remand between September 26, 2017 and December 22, 2017. In response, defendants argue that § 1447(c) permits only "actual expenses, including attorney fees, incurred as a result of the removal," and, because plaintiffs are represented by pro bono counsel, plaintiffs are unable to recover fees. Defendants further argue that plaintiffs "are not representing different parties" and therefore, according to defendants, they "are patently double billing for representation of the same client." Finally, defendants ask the court to reduce any award for overstaffing and excessive billing, as a paying client "would clearly not reasonably ever agree to pay" such a high figure.
A. Availability of Attorneys' Fees for Pro Bono Representation Pursuant to 28 U.S.C. § 1447(c)
According to 28 U.S.C. § 1447(c),
If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.
28 U.S.C.A. § 1447 (West). Defendants argue that, under this section, where plaintiffs are represented by counsel on a pro *402 bono basis, the client does not actually incur any obligation to pay fees and, therefore, no fees should be awarded. The text of the statute does not require this reading. Another reading of the text more consistent with the purpose of the statute as discussed below is that, while it requires that fees be incurred , it does not require that those fees be billed to the client.
Although the Court of Appeals for the Second Circuit has not addressed this issue, the Court of Appeals for the Ninth Circuit has expressly rejected defendants' reading of the statute. In Gotro v. R & B Realty Grp. , 69 F.3d 1485, 1487 (9th Cir. 1995), the Ninth Circuit asked:
whether by choosing the words "any actual expenses, including attorney's fees, incurred " Congress intended to remove the discretion of the district court to award fees in certain cases, such as contingent fee or pro bono cases, where the client has not actually "incurred" the obligation to pay her attorneys' fees.
(emphasis in original). Following a review of the legislative history of § 1447(c), that court answered in the negative and upheld an award of attorneys' fees to a plaintiff in a contingency fee case. Id. ; accord Williams v. Beemiller, Inc. , 2010 WL 891001, at *2 (W.D.N.Y. Mar. 10, 2010), rev'd on other grounds sub nom. Williams v. Int'l Gun-A-Rama , 416 F. Appx. 97 (2d Cir. 2011) ; Simenz v. Amerihome Mortgage Co., LLC , 544 F.Supp.2d 743, 746 (E.D. Wis. 2008) ; Keesling v. Richman , 2003 WL 1921812, at *2 (S.D. Ind. Apr. 18, 2003) ; see also Huffman v. Saul Holdings Ltd. P'ship , 262 F.3d 1128, 1135 (10th Cir. 2001) ; cf. Murkeldove v. Astrue , 635 F.3d 784, 791 (5th Cir. 2011) (awarding fees "incurred" on a contingency fee basis under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ).
"[T]he American Rule requires parties to bear their expenses in one set of courts, but when their adversary wrongfully drags them into a second judicial system the loser must expect to cover the incremental costs." Garbie v. DaimlerChrysler Corp. , 211 F.3d 407, 411 (7th Cir. 2000). This very case, in which the inappropriateness of a federal forum was readily apparent from the face of the complaint, provides a good example of the need for fee-shifting. Defendants' reading of the statute would encourage unreasonable removal by defendants in cases represented on a pro bono basis and/or disincentivize motions to remand to the proper jurisdiction by pro bono counsel. One district judge has opined that "[i]f § 1447(c) were read so as not to authorize awards in such cases, then it would not apply to most cases of improper removal." Keesling , 2003 WL 1921812, at *2. Simply put, if I were to adopt defendants' reading of the statute, the intent of Congress-which includes deterring improper removals-would be severely undermined. See Martin v. Franklin Capital Corp. , 546 U.S. 132, 140, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Indeed, I am not aware of a single decision that has supported defendants' reading of § 1447(c).[1]
In sum, I hold that § 1447(c) permits the recovery of attorneys' fees by parties represented on a pro bono basis.
I also reject defendants' argument that plaintiffs are "double billing" for their work on this matter simply because two separate firms represent the same client. Whether the firms representing plaintiffs *403 overstaffed the case or billed excessively in specific instances is discussed infra . I do not find, however, that the mere representation of plaintiffs by one pro bono firm and one not-for-profit firm amounts to double-billing in itself.
B. Calculation of Legal Fees
To calculate attorney fees, the district court must first determine the lodestar-the product of a reasonable hourly rate and the reasonable number of hours required by the case-which creates a presumptively reasonable fee. Stanczyk v. City of N.Y. , 752 F.3d 273, 284 (2d Cir. 2014). Such a method applies even in matters involving pro bono representation. See, e.g., Cohen v. Narragansett Bay Ins. Co. , 2014 WL 6673846 (E.D.N.Y. Nov. 24, 2014). As for costs other than fees, a court will generally award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher , 143 F.3d 748, 763 (2d Cir. 1998) (citations omitted).
The fee applicant bears the burden of adequately documenting and justifying the hours worked, rates sought, and costs expended. Monette v. Cty. of Nassau , 2016 WL 4145798, at *3, *10 (E.D.N.Y. Aug. 4, 2016) ; Pennacchio v. Powers , 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011).
1. The Rates Sought by Plaintiffs' Counsel
In setting a reasonable hourly rate, the Second Circuit has stated that the district court should consider the factors set forth in Johnson v. Georgia Highway Express , 488 F.2d 714, 717-19 (5th Cir. 1974), and award a rate that "a reasonable, paying client would be willing to pay."[2] Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany , 522 F.3d 182, 184, 190 (2d Cir. 2008). "[I]t should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 190.
In analyzing what a reasonable paying client would be willing to pay in cases involving pro bono representation, courts look to the amounts usually charged by attorneys handling similar matters, as opposed to rates that firms are "accustomed to handling for large, fee-paying clients...." Cho v. Koam Med. Servs. P.C. , 524 F.Supp.2d 202, 207 (E.D.N.Y. 2007). Regardless of the manner of representation, "the burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services." Blum v. Stenson , 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).
To justify their requested fees here, plaintiffs have not proffered sufficient evidence that "these attorneys were able to bill any other client for the kind of litigation services rendered on behalf of plaintiffs at the claimed rates nor have plaintiffs submitted affidavits from other attorneys who charge at comparable rates for comparable work."
*404 Cho , 524 F.Supp.2d at 208. I therefore look to the prevailing rates for attorneys in the E.D.N.Y., which are approximately $ 300-$ 450 per hour for partners, $ 200-$ 300 per hour for senior associates, and $ 100-$ 200 per hour for junior associates. E.g., Valvo v. City of N.Y. , 2018 WL 3999011, at *2 (E.D.N.Y. Jan. 23, 2018) ; Pocius v. Sec. Auto Sales Inc. , 2018 WL 3999649, at *4 (E.D.N.Y. July 6, 2018), report and recommendation adopted , 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018).
a. Counsel from Schindler Cohen & Hochman
Schindler Cohen & Hochman is located in Manhattan but does not seek an out of district rate. It states that its standard billing rates are $ 800 an hour for partners, $ 575 an hour for counsel, between $ 300 and $ 425 an hour for associates, and $ 210 an hour for paralegal work. For the purposes of this motion, plaintiffs state that they are "using rates that are significantly discounted from the standard rates that Schindler Cohen & Hochman charges its clients" and seek $ 600 an hour for a partner, $ 425 an hour for counsel, between $ 200 and $ 250 an hour for associates, and $ 125 an hour for a paralegal.
Plaintiffs' lead counsel, Steven Schindler, has over 30 years of commercial litigation experience. Plaintiffs' motion lauds Mr. Schindler's art law practice but is silent on his experience in cases such as the one at hand. His requested rate of $ 600 an hour is well beyond the highest end of the range typically awarded to partners in this district. See Sass v. MTA Bus Co. , 6 F.Supp.3d 238, 263 (E.D.N.Y. 2014) (awarding $ 425 to partner with 33 years of experience who had handled hundreds of employment discrimination cases); Anderson v. Cty. of Suffolk , 2016 WL 1444594, at *4 (E.D.N.Y. Apr. 11, 2016) (holding that rate of $ 450 per hour was warranted for well-known civil rights attorney with almost 30 years of experience who is regarded as an expert and leader in his field); cf. Linde v. Arab Bank, PLC , 293 F.R.D. 138, 141 (E.D.N.Y. 2013) (where higher rates were approved under unique circumstances presented); United States v. Sixty-One Thousand Nine Hundred Dollars & No Cents ($ 61,900.00) , 856 F.Supp.2d 484, 494 (E.D.N.Y. 2012) (same). Although defendants dispute that plaintiffs are entitled to any fees, they acknowledge that Mr. Schindler would otherwise be entitled to a rate at the higher end of the spectrum-$ 425 an hour.
Karen Steel, counsel at Schindler Cohen & Hochman, has 13 years of commercial litigation experience. Her requested rate of $ 425 per hour is beyond the highest end of the range typically awarded for attorneys with her level of experience, and, like Mr. Schindler, she has not presented supporting evidence that clients in this District have paid that rate in the past. See D'Annunzio v. Ayken, Inc. , 2015 WL 5308094, *5 (E.D.N.Y. Sept. 10, 2015) (awarding hourly rate of $ 325 to attorney with over 14 years of experience); Gray v. Toyota Motor Sales, U.S.A., Inc. , 2013 WL 3766530, at *5 (E.D.N.Y. July 16, 2013) (awarding hourly rate of $ 300 for senior associate with over 10 years' experience); Shariff v. Alsaydi , 2013 WL 4432218, at *5 (E.D.N.Y. Aug. 15, 2013) (awarding hourly rate of $ 325 to attorney with over 11 years' experience). Defendants concede that, if Ms. Steel merits any fee award, she would be entitled to a range between $ 200 to $ 325 an hour.
Associates for Schindler Cohen & Hochman, Juan Marcos Otazu and Lena Wong, have each been in practice for five years and seek $ 200 and $ 250 an hour, respectively. Defendants did not specifically oppose these requested rates, which fall within the range typically awarded in this *405 District for attorneys with their level of experience.
Plaintiffs also claim that a paralegal with Schindler Cohen & Hochman, Nathan Johnson, typically bills $ 210 an hour but is seeking only $ 125 an hour in connection with this motion. He is described as having less than one year of experience. His requested rate is beyond the highest range typically awarded, and plaintiffs have proffered no reason why a paralegal of his experience would be otherwise entitled to such a rate. See D'Annunzio , 2015 WL 5308094, at *4 ($ 70 to $ 100 reasonable rate for paralegals).
I find that Mr. Schindler is entitled to $ 425 an hour, Ms. Steel is entitled to $ 325 an hour, Mr. Otazu is entitled to $ 200 an hour, Ms. Wong is entitled to $ 250 an hour,[3] and Mr. Johnson is entitled to $ 70 an hour.
b. Counsel from NYLPI
Katie Rosenfeld was the Legal Director for NYPLI during the relevant period and claims 15 years of litigation experience in commercial and civil rights matters. Rachel Spector is the Director of the Environmental Justice Program at NYPLI with over 10 years of civil rights, environment, and employment law experience. Ms. Spector has been a Visiting Clinical Assistant Professor at Fordham University School of Law, though she has not indicated what course(s) she has taught. Melissa Iachan is a Senior Staff Attorney at NYPLI, who has practiced commercial, bankruptcy, and environmental law for over 12 years.
NYLPI argues that it "commonly seeks award of attorneys' fees in civil rights cases," and bases its rates in those cases, as in this one, on reasonable rates awarded to civil rights attorneys of similar experience and skill. As a result, NYLPI seeks between $ 425 and $ 450 an hour for their attorneys.
As discussed above, NYLPI's requested rates of $ 425 to $ 450 per hour are beyond the highest end of the range typically awarded for attorneys with their years of experience. Defendants acknowledge that, if fees were to be awarded, Ms. Rosenfeld would be entitled to $ 350 an hour and that an appropriate rate for Ms. Spector and Ms. Iachan would be in the $ 200 to $ 325 an hour range. Based on these considerations, I find that Ms. Rosenfeld is entitled to $ 350 an hour, Ms. Spector is entitled to $ 325 an hour,[4] and Ms. Iachan is entitled to $ 325 an hour.
C. The Number of Hours Expended by Plaintiffs' Counsel
In connection with the motion to remand, Schindler Cohen & Hochman and NYPLI identify the following hours expended:
*406 Schindler Cohen & Hochman NYPLI Staff Member Hours Billed Staff Member Hours Billed Mr. Schindler 18.5 Ms. Rosenfeld 0.8 Ms. Steel 176.6 Ms. Spector 11.5 Mr. Otazu 61.2 Ms. Iachan 37.1[5] Ms. Wong 24.2 Mr. Johnson 21.45
[Editor's Note: The preceding image contains the reference for footnote[5] ]
Defendants argue that the legal and factual issues in this litigation were not complex, and thus plaintiffs overstaffed this matter by employing an inordinate number of attorneys who billed over 350 hours. I agree that this matter was not inherently complex, but it became so because of defendants' changing legal theories, all of which were eventually rejected.
Nonetheless, I agree that plaintiffs' billing was excessive. To begin with, defendants challenge plaintiffs' time entries by arguing that they improperly used block-billing and vague entries. Related to the claim of block-billing is an argument by defendants that Ms. Steel and Ms. Iachan billed at attorney rates for acts that should instead have been performed by paralegal staff, such as filing and serving motion papers.
For the most part, plaintiffs' time records provide sufficient detail for this court to determine whether the amount of time spent by counsel on a given task was reasonable. Ms. Iachan's and Ms. Steel's records, however, do contain examples of block-billing. One such example is the November 17, 2017 entry by Ms. Steel, where she billed 9 hours to "finalize and serve [a] brief." Another example is the December 22, 2017 entry by Ms. Steel where she billed 7.3 hours to "[f]inalize and file reply brief in further support of remand." On reply, Ms. Steel asserts that these entries "clearly do not describe the actual clerical tasks, but the preparation of trial documents prior to filing and service." A review of the docket shows that the December 22, 2017 filing was extensive, and required eight separate filings, one of which included 16 exhibits. Accordingly, someone from plaintiffs' legal team was no doubt required to spend a significant amount of time filing those separate entries. Surprisingly, however, there are no billing entries by any paralegal relating to filing or service on November 17, 2017 or December 22, 2017, whereas in other instances, Mr. Johnson, the paralegal, billed 3.4 hours on October 4, 2017 to file three notices of appearance and a letter motion, and 0.4 hours on November 2, 2017 to draft and file a notice of withdrawal.
Similarly, Ms. Iachan billed one hour on October 4, 2017 for "Drafting Notice of Appearance, setting up ECF, and getting NOA filed in coordination with co-counsel filing pro-motion letter" and billed 0.8 hours on October 6, 2017 to "Review draft *407 letter to MJ Reyes; internal correspondence re Judge's Order, filing letter and calendaring conference." As above, no paralegal billed time for filing or calendaring on October 6, 2017. Because Ms. Steel and Ms. Iachan block-billed, I am unable to determine how many of their hours on each day were spent doing administrative tasks for which they cannot recover fees, and how many hours were spent on legal work. I therefore decline to award Ms. Steel 16.3 hours and Ms. Iachan 1.8 hours related to block-billing entries that appear to show an experienced attorney seeking compensation at her full hourly rate for work including administrative tasks. See Struthers v. City of N.Y. , 2013 WL 5407221, at *9 (E.D.N.Y. Sept. 25, 2013).
Turning to the remaining entries, although there is no impropriety in two groups of lawyers representing a single client, where there are two groups, they must confer to decide who is in charge and how the labor will be allocated. Plaintiffs' counsel here have not explained how they divided the labor and have presented the court with two separate hierarchies without any indication of the roles of each firm or attorney in the litigation of this case. Implicit in their application, however, is a structure in which Ms. Steel completed the bulk of the work, while nearly all other counsel researched, reviewed, and edited substantially the same matters. I infer from this that there was uncompensable duplication of effort.
Specifically, I find that the request for compensation for approximately 23 hours to draft a three-page pre-motion conference letter, 25 hours to prepare for the pre-motion conference, and 180 hours spent on the moving and reply briefs, even in a case such as this with a changing legal landscape, is excessive and above what a reasonable client would be willing to pay. It is likely that these figures are so high because between five and seven attorneys edited each filing and four attorneys attended the pre-motion conference.[6] Moreover, plaintiffs "cannot have it both ways" by seeking fees at or above the highest range for this district based on their claimed skill and experience, while also spending an inordinate amount of time researching and editing briefs that more experienced counsel could complete more quickly. Harty v. Par Builders, Inc. , 2016 WL 616397, at *4 (S.D.N.Y. Feb. 16, 2016).
Finally, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants," and "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice , 563 U.S. 826, 838, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011). To account for the excessive hours of work requested by plaintiffs, I make an across the board reduction in fees of 30%. See Kirsch v. Fleet St., Ltd. , 148 F.3d 149, 173 (2d Cir. 1998). Plaintiffs are therefore awarded $ 66,503.15 in attorneys' fees, as calculated below:
*408 Staff Member Rate Rate Hours Hours Hours Amount Requested Awarded Requested Denied After 30% Awarded Reduction Steven Schindler $ 600 $ 425 18.5 12.95 $ 5,503.75 Karen Steel $ 425 $ 325 176.6 16.3 112.21 $ 36,468.25 Juan Marcos Otazu $ 200 $ 200 61.2 42.84 $ 8,568.00 Lena Wong $ 250 $ 250 24.2 0.3 16.73 $ 4,182.50 Nathan Johnson $ 125 $ 70 21.45 15.02 $ 1,051.40 Katie Rosenfeld $ 450 $ 350 0.8 0.56 $ 196.00 Rachel Spector $ 425 $ 325 11.5 0.5 7.7 $ 2,502.50 Melissa Iachan $ 425 $ 325 37.1 1.8 24.71 $ 8,030.75 TOTAL 351.35 18.9 232.72 $ 66,503.15
D. Costs
Plaintiffs also request $ 9,426.24 for the costs they incurred in connection with removal and remand of this action. Defendants, aside from arguing that plaintiffs' counsel are not entitled to costs because they worked pro bono , do not dispute any of plaintiffs' specific request for costs.
My review of plaintiffs' costs relating to Pacer account charges, photocopying, a transcript charge, and local transportation finds them to be both reasonable and the type of out of pocket disbursements which are ordinarily charged to clients. See, e.g., LeBlanc-Sternberg , 143 F.3d at 763. I therefore award plaintiffs their requested $ 222.39 for these costs.
The remaining $ 9,203.85 are fees charged by Westlaw for conducting online legal research. The Second Circuit has held that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp. , 95 F.3d 153, 173 (2d Cir. 1996). However, where such expenses are usually billed to clients in addition to the attorney's hourly rate, "in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany , 369 F.3d 91, 98 (2d Cir. 2004). Based on the separate billing statements divided by client provided in plaintiffs' moving papers, I construe plaintiffs' request for Westlaw electronic research charges as a representation that those charges are not subsumed in Schindler Cohen & Hochman's hourly rates and are fees that would typically be passed on to paying clients. As with the application for fees, however, I find that the amount spent on electronic research is excessive and, therefore, reduce the award of Westlaw charges to $ 5,000.
III. CONCLUSION
I recognize that, even following the aforementioned reductions, the amounts awarded remain extraordinary for a remand motion under 28 U.S.C. § 1447(c). The fault, however, lies with defendants. Had defendants litigated sensibly, they would not be responsible for the fees awarded today. In conclusion, plaintiffs are awarded $ 66,503.15 in attorneys' fees and *409 $ 5,222.39 in costs, for a total of $ 71,725.54.
SO ORDERED.

In the only case cited by defendants, attorneys' fees were denied because the court found that defendants had an objectively reasonable basis for removal-a fact not present here-and not on the basis that they were not "incurred" by a client represented by pro bono counsel. Sleppin v. Thinkscan.com , 55 F.Supp.3d 366, 381 (E.D.N.Y. 2014).

The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson , 488 F.2d at 717-19.

Ms. Wong's billing records indicate 0.6 hours spent traveling on November 1, 2017 for the pre-motion conference, yet she billed her full rate for that time. Courts in this Circuit typically reimburse counsel for travel at one-half the determined hourly rate. See Barfield v. N.Y. City Health & Hospitals Corp. , 537 F.3d 132, 139 (2d Cir. 2008). I award Ms. Wong half her rate for 0.6 hours.

Ms. Spector billed her full rate for travel on October 26, 2017 and November 1, 2017. I award Ms. Spector half her rate for 1 hour.

Ms. Spector's Declaration seeks 35.9 hours for Ms. Iachan at the rate of $ 425 per hour, incorrectly totaling $ 15,767.50 in fees. The 35.9 figure appears to contain either an arithmetical or transcription error. Exhibit A to Ms. Spector's application contains entries totaling 37.1 hours. Moreover, 37.1 multiplied by 425 equals $ 15,767.50.

A fifth attorney, Mr. Schindler, also attended the pre-motion conference. Mr. Schindler, however, exercised appropriate billing judgment and did not bill for the time.
Law firms, whether proceeding pro bono or not, have excellent reasons to educate their attorneys and offer them courtroom experience and observation. In the normal course, however, law firms would exercise business judgment and would not pass on to their paying clients the cost of educating their attorneys. The same discretion should have been exercised here.